IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEPHEN RENFROW, ) | Case No.9:08-cv-80233-KAM |
| REGINA CAMPBELL, husband and wife ) | [ Kenneth A. Marra, Pres.] |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| FIRST MORTGAGE AMERICA, INC., d/b/a ) | |
| THE FINANCIAL GROUP, INC.; ) | |
| WASHINGTON MUTUAL BANK, f.k.a. ) | |
| WASHINGTON MUTUAL BANK, F.A.; ) | |
| UNKNOWN OWNERS OF THE EVIDENCE ) | |
| OF THE DEBT and/or OWNERS OF THE ) | |
| NOTE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW, Plaintiffs Stephen Renfrow and Regina Campbell ("Plaintiffs"), by and through the undersigned counsel, and sue First Mortgage America, Inc., doing business as The Financial Group, Inc.; the Federal Home Loan Mortgage Corporation; and J.P. Morgan Chase & Co., a Delaware corporation, and state:

1. This is an action for equitable relief and damages that exceed $75,000.00, exclusive of attorney's fees, interest, and costs.

2. Plaintiffs herein seek rescission and damages of a mortgage loan on their primary residence due to unfair, deceptive, and predatory lending practices of Defendants.

### Jurisdiction and Venue

3. This action is brought pursuant to 28 U.S.C. 1331 and arises under The Truth In Lending Act ("TILA") 15 U.S.C. §§ 1601, et seq., the Real Estate Settlement

Procedures Act ("RESPA") 12 U.S.C. §§ 2601, et seq., and the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692, et seq..

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' other claims arising out of the same transaction and occurrences that form the basis of Plaintiffs' federal claims, namely the procurement, execution, and servicing of the same mortgage loan.

5. Pursuant to 28 U.S.C. § 1391(b) & (c), venue is proper because:

   a. the subject mortgage loan concerns real property located within this Court's territorial jurisdiction;

   b. the complained of acts and omissions substantially occurred within this Court's territorial jurisdiction;

   c. one or more defendants may be found within this district; and

   d. the subject real property Mortgage has been recorded in St. Lucie County, Florida, within this Court's territorial jurisdiction.

**Parties**

6. Plaintiffs are citizens of Florida.

7. Defendant FIRST MORTGAGE AMERICA, INC., d/b/a "THE FINANCIAL GROUP, INC." ("Lender") is a Florida corporation.

8. WASHINGTON MUTUAL BANK FA, n/k/a WASHINGTON MUTUAL BANK ("WaMu") is a Nevada institution.

9. Federal Deposit Insurance Corporation ("FDIC") is a receiver of Washington Mutual Bank and was properly substituted as a party pursuant to a prior

order in this case, with said order having been entered on or about January 28, 2009. [D.E. 27.]

10.     Upon information and belief, Federal Home Loan Mortgage Corporation ("FHLMC") became the current holder of the subject Note and Mortgage during the pendency of this action. Plaintiffs' belief is based upon a sworn statement of the FDIC.

11.     Upon information and belief, Defendant J.P. Morgan Chase & Co. ("Chase"), is a Delaware corporation that acquired certain assets of WaMu and became the current servicer of the subject mortgage loan during the pendency of this action. Plaintiffs' belief is based upon a sworn statement of the FDIC.

12.     Plaintiffs were unaware of the identities of the persons holding the Note and servicing the mortgage until Plaintiffs obtained a sworn statement from the FDIC indicating same.

**General Allegations:**

13.     Plaintiffs were and are the owners of a single family residential home located at 2425 SW Avondale Street, Port St. Lucie, FL  34984 (hereafter "the Property"), whose legal description is:

> LOT 3, BLOCK 745 OF PORT ST. LUCIE, SECTION EIGHTEEN ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 13, PAGE 17, 17A THROUGH 17K OF THE PUBLIC RECORDS OF ST. LUCIE COUNTY, FLORIDA.

14.     At all times material hereto, Plaintiffs have lawfully been in continuous possession of the Property and have used same as their primary, homestead residence.

15.     On or about May 9, 2005, Plaintiffs signed a Promissory Note (the "Note"), and entered into a consumer mortgage transaction with Lender (Loan No.03-2324-070000328-8), in the form of a boilerplate adhesion contract drafted by Lender.

3

The Note extended consumer credit to Plaintiffs, subject to a finance charge, and was initially payable to Lender.

16. In early 2005, Plaintiffs heard an ad on the radio for the "ONE Loan" or "ONLY ONE Loan" advertised by "The Financial Group Inc.," described as "One percent interest rate and the only loan you will ever need as there will be no future closing costs once you get this loan."

17. The radio ad did not include in its disclosure statement the words "mortgage rates subject to change monthly" or "APR rates subject to change monthly."

18. In or about April 2005, Plaintiffs contacted The Financial Group Inc. by telephone and inquired as to this "ONE Loan" or "ONLY ONE Loan." The Financial Group Inc. was vague on the phone and insisted upon an agent visiting Plaintiffs in their home to discuss a consumer loan to refinance an existing mortgage on the Property.

19. In or about April 2005, an agent of The Financial Group Inc., named Shad Asebrook, came to Plaintiffs' home to discuss the loan process, amounts, and other details of refinancing with the "ONE loan". Mr. Asebrook told Plaintiffs that the loan would be a 1.25% loan for 30 years. The 1.25% is a margin added to an average U.S. Treasury Bond rate called the index. The loan would be an adjustable rate mortgage or "ARM".

20. A true copy of Mr. Asebrook's handwritten notes from the aforementioned meeting are attached as Exhibit "A".

21. Plaintiffs made Lender aware that they had an immediate need for funds to make repairs to the Property for damages caused by acts of God.

4

22. During the loan process, Plaintiffs noticed that there were too many add-on closing cost charges in an estimate provided by Lender. Plaintiffs discussed this with Financial Group personnel, and in March 2005 The Financial Group provided Plaintiffs with a signed document showing that a $995.00 Origination Fee would be waived. A true copy of that document is attached as Exhibit "B".

23. At closing, no add-on charges were removed, and Lender had understated the closing costs by more than fifteen percent (15%). A particular fee was reimbursed, and total closing costs were over $10,000.00 for this refinance loan. Highly upset, Plaintiffs closed on May 9, 2005, because of their need to make immediate repairs to the Property.

24. Lender violated §§ 494.0067(8) and 494.0072(2)(o), Florida Statutes, by underestimating closing costs and is liable for damages in a civil action pursuant to § 494.0019, Florida Statutes.

25. Lender violated § 494.0038 Florida Statutes and Rule 3D-40.008 Florida Administrative Code, by receiving a mortgage brokerage fee in excess of the mortgage brokerage fee authorized in the written mortgage brokerage agreement between the Lender and borrowers and is liable for damages in a civil action pursuant to § 494.0019, Florida Statutes.

26. Lender violated § 494.0038 Florida Statutes, by failing to provide written disclosures to borrowers and is liable for damages in a civil action pursuant to § 494.0019, Florida Statutes.

27. After months of making payments, Plaintiffs noticed that their payments were substantially increasing. Upon investigation, Plaintiffs discovered for the first time

that the Margin was not 1.25%; the Margin stated on their monthly statement from the loan servicer was 2.53%. Plaintiffs subsequently discovered that Lender had engaged in a classic bait-and-switch at closing by giving Plaintiffs a Note bearing a Margin of 2.5% without ever having informed plaintiffs that the Marginal interest rate would be double or more than double of all Margins that had been previously discussed. Lender did this after aggravating Plaintiffs' emotional state by significantly increasing the closing costs, having known of Plaintiffs' sensitivity and sharp objections to the excessive closing costs.

28.   By hiding and misrepresenting loan terms, The Financial Group, Inc. not only stripped Plaintiffs' equity in the Property, but padded the loan with extra charges and unnecessary fees. In addition, The Financial Group, Inc. immediately assigned or sold the loan to WaMu at the closing.

29.   Plaintiffs reasonably believe that WaMu had qualified, approved, and dictated the terms of the loan prior to the closing as there was insufficient time to underwrite the loan from scratch and evaluate Plaintiffs' creditworthiness between the time the closing occurred and the time Lender assigned the loan to WaMu.

30.   Plaintiffs reasonably believe that Lender, at the direction and control of WaMu, utilized and profited from false advertising, bait-and-switch tactics, and fraudulent loan practices by hiding loan terms, padding the loan with extra charges, substantially changing the interest rate margin, and not complying with full disclosure laws.

31. The closing occurred on May 9, 2005, and The Financial Group, Inc. did not disclose to Plaintiffs that Florida state regulators had previously sought revocation of its mortgage lending license.

32. Upon information and belief, The Financial Group, Inc.'s mortgage lending license was revoked before or shortly after the May 9, 2005, closing.

33. At all times material hereto, Lender regularly extended and offered to extend consumer credit subject to a finance charge or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof.

34. The alleged obligation was secured by the Property and principal residence of Plaintiffs.

35. Upon information and belief, Lender did not lend its assets, the assets of its depositors, investors, sub-lenders, partners, contractors, or any similar third party, or any money whatsoever. Rather, at all material times WaMu was the true lender and underwriter of the loan and engaged Lender to conceal its identity prior to the closing.

36. At closing, the Lender failed to give to the Plaintiffs all material disclosures required by the Truth in Lending Act and by other applicable law.

37. When this action was initially filed, Plaintiffs were current on the loan and had made all payments requested by the loan servicer.

38. This Complaint constitutes Notice of Rescission to all Defendants as well as Plaintiffs' desire to cancel the loan.

39. On May 18, 2005, Lender recorded its alleged mortgage as Instrument #2628269 in the Public Records of St. Lucie County, Florida, and simultaneously recorded an ASSIGNMENT OF MORTGAGE to WaMu as Instrument #2628270.

40. The subject loan has been serviced at all material times hereto by WaMu or Chase and has been identified by them as Loan Number 0700003288.

41. Servicing statements that appeared to be originated by WaMu even after the FDIC became a receiver show an "Index Value" of 4.66200 and the "Margin" as 2.53000.

42. The loan servicers' actual interest rate margin of 2.53% exceeds the disclosed interest rate margin of 1.25%, the advertised margin of 1.00%, and the 2.5% interest rate margin identified in the Note.

43. Upon information and belief, Chase currently holds escrow monies for taxes and insurance on the Property in connection with the subject loan and may claim some right, title, or interest in the subject Note and/or Mortgage.

44. Upon information and belief, FHLMC may claim some right, title or interest in the subject Note and/or Mortgage.

45. FHLMC became the successor in interest to WaMu during the pendency of this action, had constructive or actual notice of this action when it acquired the Note and/or Mortgage, took possession and became successor in interest after having such notice, and is therefore liable for the misconduct of WaMu—its predecessor in interest.

46. Plaintiffs have incurred legal fees and costs incident to the maintenance of this action.

47. All conditions precedent to the maintenance of this action have occurred or been waived.

## COUNT I - Quiet Title
**(Against All Defendants)**

48. Plaintiffs reallege and incorporate paragraphs 1 through 47, above.

49. At all times material hereto, Plaintiffs were and are in possession and have been in continuous possession of the Property and have paid all lawful taxes thereon.

50. Plaintiffs have superior and legal title to, and other interest in, the Property.

51. At all times material hereto, Plaintiffs were and are the owner of the Property and entitled to such ownership and use without interference by Defendants.

52. Defendants' claims to any right, title, or interest in the property are false and without merit.

53. Defendants' purported security interest is void because Plaintiffs are entitled to rescission of the subject Note and Mortgage and Defendants' purported security interest is illusory and unenforceable due to fraud in the procurement, illegality, and violations of the Truth In Lending Act.

54. Plaintiffs bring this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

55. Title to the Property is currently clouded by the Mortgage and Assignment of Mortgage recorded by Lender, to which Chase and/or FHLMC may claim some right title, or interest in.

56. Pursuant to Florida common law and the terms of the subject Note and Mortgage, Plaintiffs are entitled to attorneys' fees.

Wherefore, Plaintiffs seek rescission of the Note and Mortgage or an Order to cause said Note and Mortgage to be null and void or fully satisfied, an award of attorneys' fees and costs, and such further and additional relief as the Court deems just.

### COUNT II - Truth in Lending Act (15 U.S.C. § 1601 et seq.)
### (Against Lender, FHLMC, and Chase)

57. Plaintiffs reallege and incorporate paragraphs 1through 47, above.

58. At closing, the Lender failed to give to the Plaintiffs all material disclosures required by the Truth in Lending Act and by other applicable law.

59. Lender failed to provide Plaintiffs with a proper Notice of the Right to Cancel, and in so doing violated 12 C.F.R. § 226.23.

60. Plaintiffs were damaged by obtaining a loan which Plaintiffs would not have obtained had they received full and correct disclosure.

61. Plaintiffs hereby timely rescind the loan.

62. As a result, the security interest is void.

63. FHLMC, as assignee, is liable for failing to record all necessary documents reflecting the termination of the void security interest within 20 days of receipt of notice of rescission.

64. Upon information and belief, FHLMC is WaMu's successor in interest with respect to the subject Note and Mortgage and is liable for WaMu's TILA violations.

65. Upon information and belief, Chase may claim some right, title or interest in the subject Property and holds escrowed funds and may possess excess interest (above

the contracted amount) that was collected from Plaintiffs and which will need to be returned to rescind the Note and Mortgage.

66. Plaintiffs are entitled to attorneys' fees and costs pursuant to 15 U.S.C. § 1640 and the terms of the subject Note and Mortgage.

Wherefore, Plaintiffs seek rescission of the Note and Mortgage, damages and interest, an award of attorneys' fees and costs, and such further and additional relief as the Court deems just.

### COUNT III – Unfair and Deceptive Trade Practices
### (Against Defendants FHLMC and Chase)

67. Plaintiffs reallege and incorporate paragraphs 1through 47, above.

68. WaMu and Chase engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Section 501.204, Florida Statutes.

69. As loan servicers, WaMu and Chase calculated and/or collected amounts in excess of the contracted rate of interest.

70. Plaintiffs reasonably believe that FHLMC, as successor to WaMu, received such illicitly and illegally obtained excess payments, and said illegal proceeds should be disgorged from any party in possession of such funds.

71. WaMu's and Chase's unfair, unconscionable, and deceptive acts or practices proximately caused injury to the Plaintiffs.

72. Pursuant to § 501.2105, Florida Statutes, and the terms of the subject Note and Mortgage, Plaintiffs are entitled to attorneys' fees and costs.

Wherefore, Plaintiffs pray for an award of damages and interest, attorneys' fees and costs, and such further and additional relief as the Court deems just.

### COUNT IV - Breach of Fiduciary Duty
### (Against Defendant FIRST MORTGAGE AMERICA, INC., d/b/a THE FINANCIAL GROUP, INC.)

73. Plaintiffs reallege and incorporate paragraphs 1through 47, above.

74. Lender acted as a de facto mortgage broker for Plaintiffs and had a fiduciary duty to find the best loan for Plaintiffs as well as to fully disclose material facts concerning the loan.

75. Lender breached its fiduciary duties to Plaintiffs did not find the best loan for Plaintiffs or a loan that was substantially similar to the loan that was advertised.  Nor did Lender fully disclose material facts concerning the loan.

76. Instead, Lender took unconscionable advantage of Plaintiffs and abused confidential information such as the knowledge that Plaintiffs needed a loan immediately to repair damage to their home caused by the elements and therefore, to prevent further damage from occurring.  Lender abused such information by misleading Plaintiffs as to the interest rate and closing costs associated with the loan.  Knowing that Plaintiffs needed the funds immediately, Lender drastically changed the closing costs and interest rate at the closing.

77. Plaintiffs suffered actual and consequential damages as a result of Lender's breach of fiduciary duty.

Wherefore, Plaintiffs pray for an award of damages and interest, attorneys' fees and costs, and such further and additional relief as the Court deems just.

### COUNT V – Fair Debt Collection Practices Act
### (Against Defendants Chase and FHLMC)

78. Plaintiffs reallege and incorporate paragraphs 1through 47, above.

79. WaMu and Chase are debt collectors who violated the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., by collecting amounts from Plaintiffs that were not authorized by the underlying credit agreement in violation of 15 U.S.C. § 1692f.

80. WaMu and Chase are debt collectors who violated the Florida Fair Debt Collection Practices Act, §§ 559.55-559.785, Florida Statutes, by collecting amounts from Plaintiffs that were not authorized by the underlying credit agreement in violation of § 559.72, Florida Statutes.

81. In addition, FHLMC and Chase both became the assignee of the right to collect the debt as indicated by the Note and neither notified Plaintiffs of the assignment within 30 days of said assignments in derogation of § 559.715, Florida Statutes.

82. Plaintiffs have been damaged by the aforementioned violations of the federal Fair Debt Collection Practices Act and the Florida Fair Debt Collection Practices Act.

83. Plaintiffs are entitled to attorneys' fees and costs pursuant to § 559.77, Florida Statutes, and 15 U.S.C. § 1692k.

Wherefore, Plaintiffs pray for an award of damages and interest, attorneys' fees and costs, and such further and additional relief as the Court deems just.

### COUNT VI – RESPA Violations
### (Against Defendant FIRST MORTGAGE AMERICA, INC., d/b/a THE FINANCIAL GROUP, INC., and FHLMC)

84. Plaintiffs reallege and incorporate paragraphs 1 through 47, above.

85. Lender failed to provide Plaintiffs with a booklet on closing costs within three days of taking a credit application, in violation of 12 U.S.C. § 2604 and 24 C.F.R.

13

§ 3500.6. Lender also failed to provide Plaintiffs with a good faith estimate of closing costs as the estimate provided differed from the final amount of closing costs by more than fifteen percent (15%).

86. Plaintiffs reasonably believe that Lender was acting as the agent of WaMu during the pre-closing and closing process, when the aforementioned RESPA violations occurred, and WaMu is vicariously liable for said RESPA violations that were carried out on its behalf.

87. Further, Lender, WaMu, and FHLMC each failed to comply with 12 U.S.C. § 2605 when they failed to timely notify Plaintiffs of an assignment of the loan servicing.

88. Upon information and belief, Lender assigned the servicing to WaMu, WaMu assigned the servicing to FHLMC, and FHLMC assigned the servicing to Chase.

89. Plaintiffs have been damaged by the aforementioned RESPA violations.

90. Plaintiffs are entitled to attorney's' fees and costs pursuant to 12 U.S.C. § 2605.

Wherefore, Plaintiffs pray for an award of damages and interest, attorneys' fees and costs, and such further and additional relief as the Court deems just.

**COUNT VII – Violations of § 494.0025, Florida Statutes**
**(Against Defendant FIRST MORTGAGE AMERICA, INC.,**
**d/b/a THE FINANCIAL GROUP, INC., Chase, and FHLMC)**

91. Plaintiffs reallege and incorporate paragraphs 1through 47, above.

92. The subject Mortgage and Note were illegally procured in violation of § 494.0025(4), (5), Florida Statutes, which prohibits "a person . . . [i]n any practice or transaction or course of business relating to the sale, purchase, negotiation, promotion,

advertisement, or hypothecation of mortgage transactions, [from] directly or indirectly . . . engag[ing] in any transaction, practice, or course of business *which operates* as a fraud upon any person . . . or obtain[ing] property by fraud, willful misrepresentation of a future act, or false promise." Conduct falling within said definition includes, without limitation:

    a.    Engaging in false and deceptive advertising of mortgage loans and terms as prohibited by § 494.00165, Florida Statutes, which occurred in this case through the radio ad for the "ONE loan", Mr. Asebrook's representations regarding the interest rate margin, Lender's false representations that it would waive the $995.00 loan origination fee, and production of estimated closing costs which differed from the actual closing costs by more than 15%;

    b.    Lender receiving a mortgage broker fee that differed from that contained in any agreement between Lender and Plaintiffs, in violation of § 494.0038;

    c.    Violations of §§ 494.0067(8) and 494.0072(2)(o), in that Lender failed to make required disclosures as specified above; and

    d.    The TILA and RESPA violations specified above, which are incorporated herein by reference.

93.    Plaintiffs have been damaged by the foregoing illegal conduct, and may bring an action for such conduct pursuant to § 494.0019, Florida Statutes.

94.    In light of the numerous violations of state and federal lending laws, Plaintiffs would ask the Court to declare the subject Note and Mortgage to illegal, credit

all amounts Plaintiffs have already paid toward the principal, and order the loan to be rescinded. Alternatively, Plaintiffs would request the Court to award them damages.

Wherefore, Plaintiffs pray for the Court to declare the subject Note and Mortgage to illegal, credit all amounts Plaintiffs have already paid toward the principal, and order the loan to be rescinded, award Plaintiffs damages and interest, attorneys' fees and costs, and such further and additional relief as the Court deems just.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 14, 2010, I electronically served the foregoing via ECF system to Steven Ellison, Esquire, Broad and Cassel, Attorney for FDIC as Receiver of Washington Mutual Bank, 1 North Clematis Street, Suite 500, West Palm Beach, Florida 33401; and by U.S. Mail to First Mortgage America, Inc., 1606 East Lake Drive, Ft. Lauderdale, Florida 33316.

/s/  R. David McLaughlin
R. David McLaughlin, Esquire
Florida Bar No.:  29232
R. David McLaughlin, P.A.
1583 E. Silver Star Rd. #214
Ocoee, Florida 34761
(407) 222-2969 - Telephone
(407) 614-3604 - Facsimile
E-Mail:  David-McLaughlin@cfl.rr.com